

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Railroad Commission of Texas
Austin, Texas

Gentlemen:                    Attention: Col. Ernest O. Thompson

                              Opinion No. O-5026

                              Re: Power of the Railroad Commission
                                  to regulate Carrier under contract
                                  with the Army to furnish drivers
                                  to drive Army trucks carrying
                                  Army supplies between Army bases
                                  in time of war.

          The questions submitted to this department by
the Railroad Commission concern your authority to regulate
transportation under the following conditions:

          "In time of war the Army of the United States,
for the purpose of conserving military personnel, tires
and motor equipment, and to alleviate the shipping short-
age's effect on the Army, has contracted with a motor
carrier corporation to deliver over the State highways,
by the drive-away method, army trucks loaded with Army
supplies when tendered loaded by the Army at an Army base
for delivery to another Army base, such trucks being bound
to the same destination as the supplies they carry.

          Under the above conditions it is our opinion
that the Railroad Commission has no jurisdiction. We
base our opinion upon the following propositions:

    1. That the war power of the Federal Government
       is superior to the police power of the State.

    2. That this contract is within the war power of the
       Army.

### Federal War Power is Superior to State Police Power

          We believe that it is possible to answer this
question by predicating our answer upon the war powers

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Railroad Commission Page 2.

of the federal government.

In upholding the right of the United States to take over and control the railroads in time of war to the exclusion of any rights of the states therein, Mr. Chief Justice White in Northern Pacific Railroad Company vs North Dakota, 250 U. S. 135, said:

"The complete and undivided character of the war power of the United States is not disputable....

"The elementary principle that, under the Constitution, the authority of the government of the United States is paramount when exerted as to subjects concerning which it has the power to control, is indisputable. This being true, it results that although authority to regulate within a given sphere may exist in both the United States and in the states, when the former calls into play constitutional authority within such general sphere the necessary effect of doing so is, that to the extent that any conflict arises the state power is limited, since in case of conflict that which is paramount necessarily controls that which is subordinate."

The powers of congress over intrastate commerce are plenary when a federal instrumentality or national purpose is involved.

In passing upon the same question the New York Court of Appeals in Public Service Commission vs New York Central Railroad 189 N. E. 455, said:

"This action (intrastate rate fixing by a federal agency) was not justified by any of the ordinary rules of law. It can be sustained solely as the exercise of the war powers of the United States. And these powers are not limited by these ordinary rules. They are not bounded by any specific grant of authority. They are not unlike what, in the states, we call the police power, but the police power raised to the highest degree. They are such powers as are essential to preserve the very life of the nation itself. When requisite to this end the liberty of the citizen, the protection of private property, the peace-time rights of the states, must all yield to necessity."

The right of the federal government to invade the peace-time police powers of the State is shown in those cases upholding its authority to prevent sale of intoxicating liquors

in areas about army posts in time of war, and avering like
authority to punish in federal courts for the maintenance of
houses of ill fame in areas about army posts, notwithstanding
said areas are within a state.  In U. S. vs. Casey, 247 Fed. 362,
in upholding the right of the Secretary of War to forbid the
keeping of a house of ill fame within five miles of a military
camp, the court said:

> ". . . In answer to the argument that the power
> to establish the ordinary regulations of police
> has been left to the individual states, and cannot
> be assumed by the national government, it is suf-
> ficient to say that the statute here assailed rests,
> not upon the police power, but upon the war power,
> conferred on Congress and recognized by the law of
> nations."

A Texas Court of Civil Appeals recognized the
superiority of war time control of transportation over
peace-time police regulations of transportation by the
State in State vs. Hines, 226 S. W. 667, declaring a state
statute requiring railroad companies under penalty to
keep stations and water closets lighted is not applicable
to the Director General.

In Tarble's Case, 13 Wall 397, 20 U. S. (L. Ed.)
597, the court declared:

> ". . . No interference with the execution of this
> power of the national government in the formation,
> organization and government (and supply) of its
> armies by any state officials could be permitted
> without greatly impairing the efficiency, if it did
> not utterly destroy, this branch of the public service.
> . . . It is manifest that the powers of the national
> government could not be exercised with energy and
> efficiency at all times, if its acts could be inter-
> ferred with and controlled for any period by officers
> or tribunals of another sovereignty."

### Congress' Implementation of the Army to Make Such Transportation Contracts

Granted that the federal government has such power,
the question remains, has the congress authorized its use
in the instant situation?  We believe that the following
statutes provide adequate power:

"Transportation of Army stores by Private Parties. All transportation of stores by private parties for the Army shall be done by contract, after due legal advertisement, except in cases of emergency, which must be at once reported to the Secretary of War for his approval." 10 U. S. C. A. section 1374

We cited this act in our Opinion No. 0-2054 in which we held that carriers hauling for the federal government need not charge rates prescribed by the Railroad Commission.

"#53. Duties of Chief of Staff. The Chief of Staff shall preside over the War Department General Staff and, under the direction of the President, or of the Secretary of War under the direction of the President, shall cause to be made, by the War Department General Staff, the necessary plans for recruiting, organizing, supplying, equipping, mobilizing, training and demobilizing the Army of the United States, and for the use of the military forces for national defense. He shall transmit to the Secretary of War the plans and recommendations prepared for that purpose by the War Department General Staff and advise him in regard thereto; upon the approval of such plans or recommendations by the Secretary of War, he shall act as the agent of the Secretary of War in carrying the same into effect." 10 U. S. C. A. Sec. 35

"Section 1361. Control of transportation systems in time of war. The President, in time of war, is empowered through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable." 10 U. S. C. A. Sec. 1361

The highways of Texas are a part of the transportation system of Texas.

Under this Statute the act of the Secretary of War is the act of the President. If the Secretary of War orders and approves the type of contracts herein under discussion, a contract calling for the use of the State highways by the Army vehicles manned by personnel provided under this contract, to the extent necessary for passage of these vehicles, he takes possession of, and assumes control of a part of the State's highway system.

Our answer to your first question is that the Railroad Commission does not have jurisdiction over this sort of transportation.

As to your second question as to whether or not the Army may engage a common carrier to operate these trucks, we feel that Section 1363, Title 10 U. A. C. A., in providing that "the transportation of troops, munitions of war, equipment, military property, and stores throughout the United States shall be under the immediate control and supervision of the Secretary of War, and such agents as he may appoint" sufficiently authorizes the War Department to appoint any agents it desires under the facts submitted in your letter.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By        *David W. Heath*

David W. Heath
Assistant

DWH:ned

APPROVED MAR 5, 1943

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS